[Cite as *State v. Newton*, 2025-Ohio-4614.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. CT2025-0029 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2024-0718 |
| JACOB NEWTON, | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: October 3, 2025 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

**APPEARANCES:** RON WELSH, Prosecuting Attorney, JOSEPH A. PALMER, Assistant Prosecuting Attorney, for Plaintiff-Appellee; CHRIS BRIGDON, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1} The appellant, Jacob M. Newton, appeals the jury's verdict of guilty on the charges of Aggravated Burglary, Kidnapping with a sexual motivation specification, and Attempted Rape. Appellee is the State of Ohio. For the reasons that follow, we affirm.

**STATEMENT OF FACTS AND THE CASE**

{¶2} The appellant was indicted on November 7, 2024, on the following charges:

- Count One, Aggravated Burglary in violation of R.C. 2911.11(A), a felony of the first degree;

- Count Two, Kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree;

- Count Three, Kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification pursuant to R.C. 2941.147(A), a felony of the first degree;

- Count Four, Strangulation in violation of R.C. 2903.18(B)(3), a felony of the fourth degree; and,

- Count Five, Attempted Rape in violation of R.C. 2923.02 and 2907.02(A)(2), a felony of the second degree.

The appellant was appointed counsel, and pleaded not guilty at his November 13, 2024, arraignment. The matter proceeded to jury trial on January 21, 2025, at which the following evidence was presented.

{¶3} Victim L.E., who has developmental disabilities, hearing loss, vision loss, and other physical disabilities, testified that she shares a child with the appellant. L.E. does not allow the appellant into her home to visit with their child; instead, she meets him at the mall or a park so the appellant can spend time with the child. L.E. testified that the appellant would sometimes come over to her home unannounced to see their child, but she would not allow the appellant into her apartment.

{¶4} L.E. testified that on the night in question she was asleep in her bed when she awoke and saw the appellant standing at the bottom of her bed, over top of her, telling her to be quiet. Her bedroom door, which she always keeps open, was closed. She testified that she is a heavy sleeper, and that she sleeps in a T-shirt and nothing else. She refused to comply with the appellant's instruction to stay quiet and attempted to get out of bed, only to realize that there were zip ties on her ankles and wrists. She testified that as she attempted to get out of bed the appellant pushed her back down, tried to force

himself on top of her, and pushed his hand down on her chest; she further testified that she could not breath as a result of the appellant's heavy weight on top of her. L.E. testified that she was able to break the zip ties on her ankles, got out of bed, and tried to get to the door. While she was doing this, the appellant began to put his shoes back on. L.E. testified that she was not able to get the bedroom door open but the appellant was, and once to the door was open she ran downstairs.

{¶5} L.E. testified that her sister T.E. was spending the night. L.E. told T.E. what happened, and T.E. told the appellant to leave. L.E. testified that neither she nor T.E. let the appellant into her apartment. Law enforcement arrived, and L.E. gave a complete report. L.E. went to the hospital later that morning for a sexual assault examination.

{¶6} T.E. testified that she saw the appellant lurking outside L.E.'s apartment at approximately 3:00 a.m. a week or so prior to the attack, and that there was a small tear in the kitchen window screen from where the appellant "was trying to break in the window." T.E. testified further that on the night in question she was spending the night at L.E.'s apartment. She awoke around 3:00 a.m. to use the bathroom, which is upstairs. She noticed that her nephew was awake, which was odd, and told him to go back to sleep. As she exited the bathroom she noticed that L.E.'s bedroom door was closed, which was also odd. She testified that she tried to push the door open, but it would not move. She put her ear to the door but did not hear anything, so she went back downstairs. Shortly thereafter L.E. came down the stairs and told T.E. that she awoke with zip ties on her wrists and ankles and the appellant in her bedroom. T.E. ran upstairs and told the appellant to leave. T.E. testified that while the screen on the kitchen window had a small

tear from when she had found the appellant outside a week or so prior to the attack, the tear was much bigger on the night of the attack.

{¶7} Patrolman Shane Starkey of the Zanesville Police Department testified that he was on patrol on the night in question, and responded to a call of a possible burglary and alleged sexual assault. He testified regarding his investigation of the events, and the photographic evidence that was submitted. Finally, Alexus Evans, a registered nurse who worked in the emergency department at Genesis Hospital, testified regarding her sexual assault examination and assessment of L.E. The appellant moved for a partial Crim.R. 29 acquittal, which was denied, and the parties rested.

{¶8} The parties presented closing arguments, the trial court instructed the jury, and the jury retired for deliberations. The jury returned with guilty verdicts on Count One, Aggravated Burglary; Count Three, Kidnapping with a sexual motivation specification; and, Count Five, Attempted Rape. The jury returned not guilty verdicts on Count Two, Kidnapping; and, Count Four, Strangulation. The trial court ordered a presentence investigation and scheduled the matter for sentencing.

{¶9} The sentencing hearing proceeded on March 5, 2025, at which the trial court merged the Attempted Rape conviction with the Kidnapping with a sexual motivation conviction for purposes of sentencing. The trial court sentenced the appellant to 7 years in prison on Count One, Aggravated Burglary; and, 8 years with an indefinite period of up to 12 years on Count Three, Kidnapping with sexual motivation. The court further ordered that the sentences be served consecutively, for an aggregate sentence of 15 to 19 years. In addition, the appellant was ordered to register as a Tier III sex offender.

{¶10} The appellant filed a timely appeal, and sets forth the following two assignments of error:

{¶11} "I.     INSUFFICIENT EVIDENCE."

{¶12} "II.     MANIFEST WEIGHT OF THE EVIDENCE."

The appellant argues that his convictions were not based upon sufficient evidence, and were against the manifest weight of the evidence. We disagree.

**STANDARD OF REVIEW**

{¶13} The appellant challenges his convictions on both sufficiency of the evidence and manifest weight. Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 2021-Ohio-2207, as follows:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury

verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

{¶14} Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 1997–Ohio–355. The *Thompkins* Court stated:

. . . Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387. The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at

2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.* The Court in *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77 (1984), stated further:

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id.* at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

## ANALYSIS

{¶15} Although sufficiency of the evidence and manifest weight entail different legal concepts, both entail a review of the record, and as such we shall address the appellant's assignments of error together.

{¶16} The appellant was found guilty of Aggravated Burglary, Kidnapping with a sexual motivation specification, and Attempted Rape. R.C. 2911.11(A) defines aggravated burglary as follows:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

{¶17} In this case, both L.E. and T.E. testified that the appellant was not invited into L.E.'s apartment. Further, testimony was presented regarding the larger tear in the kitchen window screen, from which the jury could reasonably infer that the appellant entered the apartment by force and/or stealth. L.E. testified that she awoke to the appellant standing over her and zip ties on her wrists and ankles, from which the jury could reasonably infer the appellant's intent to inflict physical harm upon L.E. The appellant argued that too many discrepancies rendered the testimony of both L.E. and

T.E. unreliable. The jury, however, did not agree, and found the appellant guilty of aggravated burglary.

{¶18} The jury also found the appellant guilty of Kidnapping with a sexual motivation specification. R.C. 2905.01(A)(4) addresses kidnapping, and provides:

(A)    No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

*    *    *

(4)    To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;

R.C. 2941.147(A) provides for a sexual motivation specification, and states in pertinent part:

(A)    Whenever a person is charged with an offense that is a violation of section 2903.01, 2903.02, 2903.11, or 2905.01 of the Revised Code, a violation of division (A) of section 2903.04 of the Revised Code, an attempt to violate or complicity in violating section 2903.01, 2903.02, 2903.11, or 2905.01 of the Revised Code when the attempt or complicity is a felony, or an attempt to violate or complicity in violating division (A) of section 2903.04 of the Revised Code when the attempt or complicity is a felony, the indictment, count in the indictment, information, or complaint charging the offense may include a specification that the person committed the offense with a sexual motivation. The specification shall be stated at the

end of the body of the indictment, count, information, or complaint and shall be in substantially the following form:

"SPECIFICATION (OR, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that the offender committed the offense with a sexual motivation."

{¶19} L.E. testified that she awoke in the middle of the night, sleeping in a t-shirt and nothing else, to the sight of the appellant standing at the foot of her bed standing over her. Her bedroom door, which she usually kept open, was shut. The appellant, who had taken off his shoes, told L.E. to be quiet, put his hand on her chest, and started to climb on top of her. She tried to get up, and realized that her ankles were zip tied, as were her wrists. The testimony of T.E. supports L.E.'s description of the events. The appellant argues that L.E.'s story, especially when compared with the testimony of T.E., has too many inconsistencies to be credible. However, as set forth by our brethren at the Tenth District court of appeals:

The credibility of the witnesses is a matter primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. A reviewing court gives deference to the jury's determination of witness credibility because the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). In judging witness credibility, a jury "may believe

or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Additionally, when deciding whether to believe a particular witness's testimony, a jury may " 'consider the reasonableness of the testimony and all the facts and circumstances surrounding the testimony.' " *State v. Greenwood*, 10th Dist. No. 19AP-683, 2021-Ohio-921, 2021 WL 1102350, ¶ 41, quoting *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, 2016 WL 6994228, ¶ 35.

*State v. Elliott*, 2024-Ohio-3376, ¶ 171 (10th Dist.), *appeal not allowed,* 2025-Ohio-231. The credibility of the witnesses is within the purview of the jury.

**{¶20}** Finally, the jury found the appellant guilty of Attempted Rape. R.C. 2923.02(A)(2) provides for attempted offenses, and states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2907.02(A)(2) states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The trial testimony established that L.E. awoke with zip ties on her ankles and wrists and the appellant standing over her in her bedroom in the middle of the night. Her bedroom door, which she usually kept open, had been shut. The appellant told L.E. to be quiet, put his hand on her chest, and attempted to climb on top of her. L.E. was, however, able to get away. The jury could reasonably infer from the testimony regarding these events that, had the appellant been successful, his actions would have constituted the offense of rape; that is, engaging in sexual conduct with L.E. by purposely compelling

her to submit by force. The fact that there may have been some discrepancies in the testimony of L.E., who is developmentally disabled and has difficulty hearing and seeing, does not render her account of the events completely lacking in credibility, and we cannot say that the jury lost its way in this regard.

{¶21}  The jury heard the testimony of the witnesses and viewed all the evidence, deliberated, and found the appellant guilty of Count One, Aggravated Burglary; Count Three, Kidnapping with a sexual motivation specification; and, Count Five, Attempted Rape.  We cannot say, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of said crimes beyond a reasonable doubt. Nor can we say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. We therefore find the appellant's assignments of error numbers one and two to be without merit.

## CONCLUSION

{¶22} Based upon the foregoing, we find that the appellant's convictions on the charges of Aggravated Burglary, Kidnapping with a sexual motivation specification, and Attempted Rape were supported by sufficient evidence, and were not against the manifest weight of the evidence. Accordingly, the appellant's assignments of error numbers one and two are overruled, and the judgment of the Muskingum County Court of Common Pleas is hereby affirmed.

{¶23} Costs to Appellant.

By: Baldwin, P.J.

Montgomery, J. and

Gormley, J. concur.